## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACIE HOLSINGER, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. __3:18-cv-100_____ |
| | ) | |
| vs. | ) | |
| | ) | |
| THE COUNTY OF CAMBRIA and | ) | |
| CAMBRIA COUNTY CORONER'S | ) | |
| OFFICE, | ) | JURY TRIAL DEMANDED |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

## INTRODUCTION

1.      This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").  The plaintiff alleges that the defendants retaliated against her for making a good faith sexual harassment complaint against her supervisor.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3.      This Court has federal question jurisdiction because the plaintiff's claims arise from a federal statute. 28 U.S.C. §1331.

4.      This Court has personal jurisdiction over the defendants because their contacts with Pennsylvania and this federal judicial district meet the requirements necessary to satisfy the notions of fair play and justice established in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

5.     Venue is proper under 28 U.S.C. § 1391 because the defendants reside here and the plaintiff's claims arise from events which occurred in this judicial district.

6.     The plaintiff filed a timely charge of discrimination with the Pittsburgh Equal Employment Opportunity Commission (EEOC), requesting that it be dual-filed with the Pennsylvania Human Relations Commission.

7.     On or about March 2, 2018, the plaintiff received a 90-day Notice of Right to Sue from the EEOC.  This complaint is filed within 90 days from the date she received that notice.

8.     Because the plaintiff was issued a Notice of Right to Sue, she must file this complaint now to preserve her federal claims.  She will seek leave of court to add claims under the Pennsylvania Human Relations Act when her state administrative remedies are exhausted.

9.     The plaintiff has properly exhausted her federal administrative remedies.

**PARTIES**

10.     The previous paragraphs are incorporated.

11.     Plaintiff, Stacie J. Holsinger ("Ms. Holsinger"), is an adult individual residing at 1769 Scalp Avenue, Johnstown, Cambria County, Pennsylvania 15904.

12.     Defendant, the County of Cambria ("Cambria County"), is a political subdivision of the Commonwealth of Pennsylvania and a fourth class county organized and existing under the Pennsylvania County Code.  Its principal place of business is 200 South Center Street, Ebensburg, Cambria County, Pennsylvania 15931.

13.     Defendant, Cambria County Coroner's Office (Coroner's Office), is a department of Cambria County.  Its principal place of business is 110 Franklin Street, Suite 500, Johnstown, Cambria County, Pennsylvania 15901.

14.     A Pennsylvania coroner is an elected official pursuant to 16 P.S. § 401(a)(4).  The duty of a coroner is to investigate the facts and circumstances concerning deaths which appear to have happened within the county.

15.     At all times relevant to this complaint, defendants were Ms. Holsinger's employer and employed more than fifteen (15) employees.

## FACTUAL BACKGROUND

16.     The previous paragraphs are incorporated.

17.     On or about July 16, 2012, the defendants hired Ms. Holsinger on a temporary per diem basis as the Executive Assistant to the Coroner.  At that time, her immediate supervisor was Coroner Dennis Kwiatkowski.

18.     On or about August 5, 2012, her position was converted to full-time.

19.     On or about January 1, 2016, Jeffrey Lees was elected as Coroner ("Coroner Lees").  He became Ms. Holsinger's supervisor.

20.     On or about June 21, 2017, Ms. Holsinger filed an internal, good faith complaint of sexual harassment against Coroner Lees.  A copy of her complaint, which was submitted to Bryan J. Beppler ("Mr. Beppler"), Cambria County's Director of Human Resources, is attached as Exhibit A.

21.     Almost immediately afterwards, Ms. Holsinger's supervisors began a campaign of retaliation designed to force her to quit.

22.     On or about June 23, 2017, the defendants placed Ms. Holsinger on paid administrative leave, ostensibly to investigate her complaint.

23.     On or about June 29, 2017, Mr. Beppler mailed a letter to Ms. Holsinger acknowledging her complaint.  The letter stated that his investigation revealed that that her complaint was unsubstantiated.  A copy is attached as Exhibit B.  She did not receive it until after she returned to work.

24.     On or about July 5, 2017, Ms. Holsinger returned to work.

25.     Upon her arrival, she found that Chief Deputy of the Cambria County Coroner's Department, Joseph Hribar ("Chief Deputy Hribar"), was sitting where her desk had been located for the past five years.  She had been moved to another office down the hall.  She also noticed that her personal items had been rifled through; a few were missing, including some work files.

26.     One hour later, Ms. Holsinger was called to the Coroner's office.  Coroner Lees and Mr. Beppler were present.  Mr. Beppler asked her if she had received his letter; she replied that she had not.  He informed her that there was no evidence to support her complaint.  She disputed his findings.

27.     She pointed out that she was already being retaliated against because her office, which had been located in the receiving office next to the Coroner for twenty-five years, had been moved to an inferior location with no windows.

28.     Mr. Beppler instructed that, effective immediately, all communications to and from her had to go through Chief Deputy Hribar or Deputy Scott Effinger.  She was not permitted to have any communications with Coroner Lees unless it was a death-call, and even then, she was only allowed to page him.

29.     Mr. Beppler further instructed that her duties would be increased. Ultimately, the increased workload forced her to work from 8 hours per day to sometimes 12 hours per day.

30.     That afternoon, she treated with a psychologist for job stress.

31.     On or about July 10, 2017, Ms. Holsinger discovered that someone had rummaged through her desk and removed some documents.  Some of her personal items had been moved.

32.     She also noticed that the temperature in her office had been turned down from its standard setting of 68 degrees, to 52 degrees.  Over the ensuing two months, she kept turning the temperature back up to 68 degrees, only to find that someone had turned it back down to 52 degrees.  She confirmed with the janitor that the temperature was supposed to be 68 degrees.

33.     On or about July 17, 2017, Chief Deputy Hribar told Ms. Holsinger that the lock to the main door had been changed, and that she would no longer be permitted to have a key.  He told her that she would have to notify him if she needed to come in early, stay late, or leave for lunch.

34.     He also told her that she would no longer have access to incoming US mail, interoffice mail, or incoming office e-mails.  She later discovered that someone had

changed the e-mail password so she would not be able to access the e-mails.

35.     On or about July 19, 2017, a press conference was held concerning a death. Ms. Holsinger was not notified ahead of time as she had been in the past.  As a result, she was unable to plan for the press conference or greet the reporters ahead of time, which was a part of her job duties.

36.     On or about July 20, 2017, Ms. Holsinger learned that Chief Deputy Hribar began to process the purchase orders.  This had been her responsibility.

37.     On or about July 27, 2017, Ms. Holsinger was not notified of new software training as she had been in the past.

38.     On or about July 28, 2017, Ms. Holsinger was called to a meeting with Coroner Lees and Mr. Beppler.  They reprimanded her for an alleged error concerning an under 24-hour death-call on July 21, 2017.  In fact, this reprimand was pretext for retaliation.

39.     On or about July 31, 2017, Coroner Lees told Ms. Holsinger that the Yellow Ribbon Program, which she had coordinated in the past, was being turned over to Chief Deputy Hribar.

40.     Coroner Lees also instructed that her dress code would be changed from her customary professional office attire to a new dress code.  This was a strict dress code which required that her hair be cut short or pulled up and prohibited colored nail polish, jewelry, heeled shoes, dresses, and skirts.  She was only allowed to wear a coroner's shirt, slacks, and a belt with her badge exposed.  The next day, employees made unflattering remarks about her new attire.

41.     On or about August 2, 2017, Chief Deputy Hribar took Ms. Holsinger on a desk call.  He instructed her to help him lift a decedent's body.  She had never been asked to do this before.  This made her feel inadequate and humiliated, which was Chief Deputy's Hribar's intention.

42.     On or about August 3, 2017, Ms. Holsinger was not notified again of a press conference.  One of the reporters commented on the unflattering change to her office and asked her if she had been demoted.

43.     On or about August 7, 2017, Ms. Holsinger called off work due to job stress.

44.     On or about August 8, 2017, Ms. Holsinger's physician gave her a doctor's note stating that she would be off work through August 15, 2017 due to job stress.  The HR Department told her that she needed to obtain FMLA approval, which she did.

45.     On or about August 15, 2017, Ms. Holsinger returned to work.

46.     Chief Deputy Hribar assigned her additional duties which required her to work until 7:40 PM that day, resulting in a 12-hour work day.  A few hours beforehand, he sarcastically remarked, "What did you do all morning?"

47.     On or about August 16, 2017, Ms. Holsinger was called to another meeting with Coroner Lees and Mr. Beppler.  They gave her a written warning for the incident from July 21, 2017 (which had occurred three weeks earlier).  The warning was copied to the Coroner's Solicitor and the County Commissioners.  A copy and of the warning and her rebuttal are attached as Exhibit C.

48.     On August 18, 2017, Ms. Holsinger submitted her letter of resignation, effective September 1, 2017.  A copy is attached as Exhibit D.

49.     She contends that she was constructively discharged for making the sexual harassment complaint against Coroner Lees.

## COUNT I – TITLE VII – RETALIATION - HOSTILE WORK ENVIRONMENT

50.     The previous paragraphs are incorporated.

51.     Ms. Holsinger engaged in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), when she made a good faith complaint of sexual harassment by Coroner Lees.

52.     As a result of Ms. Holsinger's protected activity, the defendants immediately took adverse employment action against her by subjecting her to a pervasive and severe hostile work environment, as described in paragraph 22 through 47 above. They created a hostile work environment designed to force Ms. Holsinger to quit.

53.     Ms. Holsinger suffered intentional discrimination because of her protected activity.

54.     The discrimination was severe and pervasive.

55.     The discrimination detrimentally affected her.

56.     The discrimination would have detrimentally affected a reasonable person in similar circumstances.

57.     The harassment was perpetrated by the defendants' supervisors, thus establishing vicarious liability.

58.     As a result of the defendants' unlawful actions. Ms. Holsinger suffered damages which include emotional distress, humiliation, embarrassment, loss of self-esteem, necessity to seek medical and psychological care, inconvenience, and loss of life's pleasures.

**WHEREFORE,** the plaintiff respectfully requests judgment against the defendants in an amount that will compensate her for her injuries and damages resulting from the defendants' violation of her rights under Title VII, and award her compensatory damages, punitive damages, court costs, expense of litigation, expert witness fees, reasonable attorney's fees, prejudgment interest, as well as any other further legal and equitable relief this Court deems just and appropriate.

## COUNT II – TITLE VII – RETALIATION - CONSTRUCTIVE DISCHARGE

59.     The previous paragraphs are incorporated.

60.     The defendants' unlawful conduct described in paragraphs 22 through 47 of the complaint would have caused a reasonable employee in Ms. Holsinger's position to feel compelled to resign.

61.     Ms. Holsinger resigned because of the defendants' conduct.

62.     Ms. Holsinger's decision to resign was reasonable given the severe and pervasive hostile work environment she suffered.

63.     As a result of the defendants' unlawful conduct, Ms. Holsinger suffered damages which include, but are not limited to, loss of back and front pay, loss of earnings

potential, loss of career opportunities, loss of future earnings, lost benefits past and future, damage to her personal and professional reputation, emotional distress, humiliation, embarrassment, inconvenience, and loss of life's pleasures.

**WHEREFORE,** the plaintiff respectfully requests judgment against the defendants in an amount that will compensate her for her injuries and damages resulting from the defendants' violation of her rights under Title VII, and award her reinstatement, back pay and, if appropriate, front pay, lost wages, past and future, loss of future earnings and earnings capacity, loss of career opportunities, loss of employee benefits, past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to personal and professional reputation, court costs, expense of litigation, expert witness fees, punitive damages, reasonable attorney's fees for this legal action, prejudgment interest, as well as any other further legal and equitable relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the plaintiff demands a trial by jury in this action for all issues so triable.

Respectfully submitted,

TREMBA, KINNEY, GREINER & KERR, LLC

Date:   5/11/2018          By:   /s/ Lawrence D. Kerr, Esq.
                                 Lawrence D. Kerr, Esq.
                                 PA I.D. #58635

                                 /s/ Claire E. Throckmorton, Esq.
                                 Claire E. Throckmorton, Esq.
                                 PA I.D. #321125
                                 Attorneys for Plaintiff
                                 302 West Otterman Street
                                 Greensburg, PA 15601
                                 (724) 838-7600
                                 (724) 838-8870 *facsimile*